UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN D. EVANS, | ) | 4:06CV0972 |
| | ) | |
| Petitioner | ) | JUDGE DONALD NUGENT |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| STATE OF OHIO, | ) | |
| | ) | |
| | ) | |
| Respondent | ) | REPORT AND RECOMMENDED |
| | ) | DECISION OF MAGISTRATE JUDGE |

McHARGH, MAG. J.

The petitioner Shawn D. Evans ("Evans") has filed a petition pro se for a writ of habeas corpus arising out of his 2003 conviction for possession of cocaine in the Trumbull County, Ohio, Court of Common Pleas.  (Doc. 1.)  Evans raises three grounds for relief in his petition:

    1.  Speedy trial violation.

    2.  Ineffective assistance of counsel.

    3.  Conviction obtained by use of evidence gained pursuant to an unlawful arrest.

(Doc. 1, at §§ 12.A.-12.C.)

The respondent argues that the first ground should be denied on the merits, and that the second and third were not fairly presented to the state courts.  (Doc. 14.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

On September 19, 2002, Detectives Melanie Gamble and David Weber, of the Warren Police Department, formally filed a complaint against appellant, alleging that he possessed cocaine, a Schedule II controlled substance, a felony of the fifth degree, in violation of R.C. 2925.11. Appellant was arrested on September 23, 2002. Appellant promptly posted bond that day and was released. On September 24, 2002, appellant made his initial appearance in court and entered a plea of not guilty.

On January 7, 2003, appellant waived a preliminary hearing, stipulated to probable cause, and was bound over to the Trumbull County Grand Jury. Appellant was indicted for a violation of R.C. 2925.11, on February 4, 2003.

On March 5, 2003, appellant moved for the matter against him to be dismissed based upon violation of his speedy trial rights and subsequent prejudicial delay. On March 28, 2003, at a pre-trial hearing in the matter, the trial court heard appellant's motion to dismiss.

No testimony was provided at the hearing. Instead, the parties stipulated that, on April 25, 2001, appellant was held by the Warren Police Department for six hours while the police department obtained and executed a search warrant for his residence. The parties also stipulated that, at the end of those six hours, appellant was released; appellant was not subject to bail or any physical restraints; and charges were not filed against appellant until September 19, 2002.

It is worth noting that, although appellant contends otherwise, the parties did not stipulate that he was "arrested." A careful reading of the transcript reveals that there existed no such stipulation. At best, the parties agreed that appellant was detained. After discussing the above facts, which were indeed agreed upon, the following exchange occurred:

"THE COURT: Would you please stipulate to those operative facts?

" * * *

2

"[Counsel for appellant]: And I would like to state for the record that his arrest occurring on April 25th, 2001 included being in jail behind bars for six hours.

"[Counsel for the state]: I would disagree with that. He was never booked into the jail. He was held in a holding cell down at the Warren Police Department. He was never booked into the jail. He was basically detained for six hours and released. That's what I'm willing to stipulate to.

"[Counsel for appellant]: And that was behind bars. He was not allowed to leave.

"[Counsel for the state]: I'm stipulating he was detained for six hours, yes.

"[Counsel for appellant]: *Okay.*

"THE COURT: But he was never booked on this charge; are you willing to stipulate to that?

"[Counsel for the state]: He's never done a day in jail in this case.

"[Counsel for appellant]: The fact is, he was arrested. That's all I need.

"THE COURT: All right. So does everyone agree on those stipulated facts?

"[Counsel for appellant]: Yes.

"[Counsel for the state]: Yes." (Emphasis added.)

Appellant submitted no testimony or other evidence to the court that detailed the events that occurred, on April 25, 2001.

After the hearing, each party submitted a brief on the relevant legal issues. The trial court denied appellant's motion, on April 18, 2003. The trial court did not state its findings of fact, and appellant never requested them.

On May 29, 2003, appellant pleaded no contest to the charge set forth in the indictment. The trial court accepted appellant's plea and found him guilty of the offense. The trial court held a sentencing hearing, on

3

August 15, 2003. In a judgment entry, dated August 26, 2003, the trial court suspended appellant's driver's license for six months and sentenced him to serve six months of imprisonment.

(Doc. 14, RX 14, at 2-4; <u>State v. Evans</u>, No. 2003-T-0132, 2005 WL 879401, at *1-*2 (Ohio Ct. App. Apr. 15, 2005.)

On Sept. 15, 2003, Evans filed a notice of appeal, raising a single assignment of error: "The trial court erred in denying defendant-appellant's motion to dismiss since defendant-appellant's speedy trial rights were violated when the state failed to prosecute him within 270 days of his arrest." (Doc. 14, RX 11-12.) On April 15, 2005, the court of appeals affirmed his conviction. (Doc. 14, RX 14; <u>State v. Evans</u>, No. 2003-T-0132, 2005 WL 879401, at *1-*2 (Ohio Ct. App. Apr. 15, 2005).)

Evans filed a timely appeal with the Ohio Supreme Court on June 1, 2005, setting forth a single proposition of law:

The speedy trial provisions set forth by R.C. 2945.71 that require the state to prosecute a criminal defendant within 270 days of his arrest apply from the date that the defendant was first arrested for the crime.

(Doc. 14, RX 16.) On Sept. 7, 2005, the Ohio Supreme Court denied Evans leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 14, RX 18; <u>State v. Evans</u>, 106 Ohio St.3d 1509, 833 N.E.2d 1250 (2005).)

On April 20, 2006, Evans filed a timely petition for a writ of habeas corpus in this court.

4

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

5

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Evans has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  ALLEGED SPEEDY-TRIAL VIOLATION

Evans alleges that he was denied his right to a speedy trial because he was arrested and detained on April 25, 2001, and the matter did not come before the court until Sept. 19, 2002, approximately seventeen months later.  (Doc. 1, at § 12.A.)  He was arrested at his brother's residence, read his Miranda rights, and taken into custody and "held without his liberties" for six hours.  He claims that the evidence seized during his arrest was "officially documented and logged designated to be tested for authenticity."  (Doc. 1, memorandum in support, at 1.)

The respondent concedes that this ground was exhausted in the state courts. (Doc. 14, at 7.) However, the state argues that Evans has failed to establish a due process violation under Barker v. Wingo, 407 U.S. 514 (1972). Id. at 15-19.

On direct appeal, Evans had argued that Ohio Rev. Code § 2945.71 required the state to prosecute him within 270 days of his arrest, and that those provisions apply from the date that the defendant was first arrested for the crime. (Doc. 14, RX 12, at 2-4.) Although the state court of appeals recognized that both the U.S. Constitution and the Ohio Constitution guarantee a criminal defendant the right to a speedy trial, the court analyzed his claim under state law. (Doc. 14, RX 14, at 4-7; Evans, 2005 WL 879401, at *2-*3.)

Under R.C. § 2945.71(c)(2), a person against whom a felony charge is pending must be brought to trial within two hundred seventy days after his arrest. Norris v. Schotten, 146 F.3d 314, 328 (6th Cir.), cert. denied, 525 U.S. 935 (1998); State v. Ramey, No. 69080, 1996 WL 112420, at *6 (Ohio Ct. App. Mar. 14, 1996). The dispute was whether the six-hour detention of Evans on April 25, 2001, constitutes the triggering "arrest." The state court found that "the speedy trial statute began to run on September 23, 2002, when appellant was arrested on the complaint filed by detectives of the Warren Police Department, alleging a violation of R.C. 2925.11," and that, with tolling for Evans' motion to dismiss, there was no violation of the speedy trial statute. (RX 14, at 7; Evans, 2005 WL 879401, at *4.)

An alleged violation by state officials of a state speedy trial law is not remediable through a federal habeas corpus petition. Norris, 146 F.3d at 328;

7

Hogan v. McBride, 74 F.3d 144, 145 (7th Cir. 1996), amended by 79 F.3d 578 (7th Cir. 1996); Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994), cert. denied, 514 U.S. 1024 (1995); Massenburg v. Pitcher, No. 00-10503, 2003 WL 88118, at * 8 (E.D. Mich. Jan. 10, 2003) (citing Norris).  Such a claim arises under state law and is not cognizable on federal habeas review.  Massenburg, 2003 WL 88118, at * 8 (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  To the extent that the petition relies on a violation of the Ohio speedy-trial statutes, it should not be granted.

Rather, the petitioner must establish that the Ohio Court of Appeals decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.  Danks v. Davis, 355 F.3d 1005, 1008 (7th Cir.), cert. denied, 542 U.S. 943 (2004); Wilson v. Mitchell, No. 02-3834, 2003 WL 1194257, at *2 (6th Cir. Mar. 7, 2003); Poe, 39 F.3d at 207; Massenburg, 2003 WL 88118, at * 8.  The court's consideration of a claim that Ohio has violated its speedy trial rules is limited to a determination of whether the state's action has violated the petitioner's Sixth Amendment right to a speedy trial.  Poe, 39 F.3d at 207; Massenburg, 2003 WL 88118, at * 8.


## IV.  ALLEGED SIXTH AMENDMENT VIOLATION

The Sixth Amendment to the U.S. Constitution guarantees the accused a speedy trial in all criminal prosecutions.  The right to a speedy trial is "fundamental," and is imposed on the states by the Due Process Clause of the Fourteenth Amendment.  Barker v. Wingo, 407 U.S. 514, 515 (1972).  The Supreme

8

Court said that the states "are free to prescribe a reasonable period consistent with constitutional standards."  Id. at 523.  Respondent contends Evans cannot demonstrate any constitutional violation.  (Doc. 12, at 14-15.)

The Barker Court set out four criteria by which an alleged violation of the constitutional right to a speedy trial is to be judged:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.  Barker, 407 U.S. at 530; Norris, 146 F.3d at 326.  None of the four factors is either necessary or sufficient to finding a deprivation of the right to a speedy trial, but must be balanced with other relevant circumstances.  Id. at 533.

In a subsequent decision, Doggett v. United States, the balance was described as "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."  Doggett v. United States, 505 U.S. 647, 651 (1992).

The Ohio Court of Appeals did not undertake the four-part analysis set forth in Barker.  Where a state court decides a constitutional issue without extended discussion, the federal habeas court should focus on the result of the state court's decision, applying the correct standard in its analysis.  Harris v. Stovall, 212 F.3d 940, 943 n.1 (6th Cir. 2000), cert. denied, 532 U.S. 947 (2001).

9

A.  Length of the Delay

The Barker Court noted that the first factor is "a triggering mechanism,"
instructing that "[u]ntil there is some delay which is presumptively prejudicial,
there is no necessity for inquiry into the other factors that go into the balance."
Barker, 407 U.S. at 530; Maples v. Stegall, 427 F.3d 1020, 1025 (6th Cir. 2005);
Norris, 146 F.3d at 326.  Thus, the first inquiry is "whether there was a
presumptively prejudicial delay" to warrant further investigation of the Barker
factors.  Norris, 146 F.3d at 326-327.

The length of the delay is measured from the date of the indictment or the
date of the arrest, whichever is earlier.  Maples, 427 F.3d at 1026 (citing United
States v. Marion, 404 U.S. 307, 320 (1971)); Redd v. Sowders, 809 F.2d 1266, 1269
(6th Cir. 1987); United States v. Roberts, 548 F.2d 665, 667 (6th Cir.), cert. denied,
431 U.S. 920 (1977) (citing Dillingham v. United States, 423 U.S. 64 (1975) (per
curiam)).  In Roberts, for example, the defendants were all arrested the day after
the bank robbery, August 28, 1973, and charged on September 7, 1973.  The charges
were dropped one month later.  However, after the men were released from prison
on parole, they were again taken into custody on the same bank robbery charges in
May 1975.  The court found that since they were originally arrested on August 28,
1973, "their right to a speedy trial under the Sixth Amendment accrued at that time
rather than on the date of their [1975] indictment."  Roberts, 548 F.2d at 667 (citing
Dillingham).

10

In this case, the court of appeals ruled that "[t]he decision of a police department to detain an individual is not equivalent to a formal charge or arrest." The court did not consider the April 2001 detention of Evans to be an "arrest." Thus, the state court found that "the speedy trial statute began to run on September 23, 2002, when appellant was arrested on the complaint . . . alleging a violation of R.C. 2925.11." The court found no speedy trial violation.  (RX 14, at 6-7; Evans, 2005 WL 879401, at *3-*4.)

### 1.  Arrest

The initial stage of a criminal prosecution is the arrest.  Terry v. Ohio, 392 U.S. 1, 26 (1968).  See also Dillingham, 423 U.S. at 65.  "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."  Dillingham, 423 U.S. at 65 (quoting Marion, 404 U.S. at 320-321).

It is clear under the Supreme Court's Fourth Amendment case law that whenever detention and questioning by police officers are more than brief and cursory, there has been an arrest.  Dunaway v. New York, 442 U.S. 200 (1979).  See, e.g., Kaupp v. Texas, 538 U.S. 626, 630-631 (2003); Colorado v. Roybal, 655 P.2d 410, 412 (Colo. 1982) (citing Dunaway).  Where an accused is taken to a police station, and detained for custodial interrogation, in this case for six hours, he has been arrested, and it is immaterial that he is not booked at that time.  Dunaway, 442 U.S. at 212-213, 216.  See doc. 14, RX 6, at 1 (State's Supplemental Answer in

11

Opposition to Defendant's Motion to Dismiss) ("Defendant was held in custody for approximately six (6) hours until a search warrant was obtained"); doc. 14, RX 20, at 2 (transcript of hearing on motion to dismiss) (State stipulates that "Defendant was arrested and  detained for approximately six hours while Warren Police officers obtained and executed a search warrant").

Here, the state appellate court ruled that the April 2001 detention was not an "arrest," opining that "Appellant submitted no testimony or other evidence to the trial court detailing the events that occurred on April 25, 2001.  As such, we cannot conclude that the speedy trial statute began to run on April 25, 2001."  (Doc. 14, RX 14, at 7; Evans, 2005 WL 879401, at *4.)

However, the trial court had scheduled an evidentiary hearing for the motion to dismiss on speedy trial grounds.  Moreover, Evans cited to that hearing in the first sentence of the first page of his appellate brief:  "It is stipulated by both parties that Defendant-Appellant was arrested for possession of a small amount of cocaine on or about April 25, 2001.  (See Transcripts of Motion to Dismiss Hearing.)"  (Doc. 14, RX 12, at 1.)  At the hearing, the trial court noted "it's my understanding in lieu of an evidentiary hearing today both parties are willing to stipulate to the operative facts that would be necessary for this Court to make a decision."  (Doc. 14, RX 20, at 2.)

In its recitation of the factual stipulations made during that hearing, the court of appeals inadvertently omitted the following initial response by the state:

[*THE COURT: Would you please stipulate to those operative facts?*]

12

MS. BARBER [counsel for the state]:  I believe we're willing to stipulate that on April 25, 2001, the Defendant [Evans] was arrested and detained for approximately six hours while Warren Police officers obtained and executed a search warrant at 828 Landsdowne, Northwest here in the City of Warren, Trumbull County, Ohio.

I believe we're also willing to stipulate that at the end of those six hours the Defendant was released.  He was not subject to bond or any other physical restraints at that point.  And then I believe we're willing to stipulate that charges were not filed against this Defendant until September 19th of 2002.

(Doc. 14, RX 20, at 2 (transcript of hearing on motion to dismiss), compare with RX 14, at 3; Evans, 2005 WL 879401, at *1.)  See also doc. 14, RX 6, at 1 (State's Supplemental Answer in Opposition to Defendant's Motion to Dismiss) ("Defendant was held in custody for approximately six (6) hours until a search warrant was obtained"), and 2 ("both counsel stipulated [that] Defendant was arrested on April 25, 2001").  The appellate court asserted that "it is apparent that the parties essentially misunderstand the nature of the stipulations made at the hearing." (Doc. 14, RX 14, at 7; Evans, 2005 WL 879401, at *3.)

The parties stipulated that Evans was arrested, detained for six hours and interrogated on April 25, 2001.  A complaint[1] was not formally filed against him until Sept. 19, 2002, and he made an initial appearance on those charges on Sept. 24, 2002.

_____

1The complaint was based on the drugs seized in April 2001.  (Doc. 14, RX 5, exh. A (complaint).)

13

Assuming that Evans' April 2001 detention was an "arrest," broadly defined, does the nature of that temporary detention trigger the Sixth Amendment's speedy trial protections?

The Supreme Court has said that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." Dillingham, 423 U.S. at 65. The protections of the speedy trial provision "need not await indictment, information, or other formal charge." Marion, 404 U.S. at 321. See generally Dunaway, 442 U.S. at 212-213. But where a defendant is not "incarcerated or subjected to other substantial restrictions on [his] liberty," that time is not counted toward a speedy trial claim. United States v. Loud Hawk, 474 U.S. 302, 312 (1986) (citing United States v. MacDonald, 456 U.S. 1 (1982)). In addition, the Speedy Trial Clause does not "limit the length of a preindictment criminal investigation even though 'the [suspect's] knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life.'" Loud Hawk, 474 U.S. at 311-312 (quoting MacDonald, 456 U.S. at 9).

The state court's finding that the detention of Evans on April 25, 2001, did not result in a speedy trial violation was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

14

<u>2.  Delay</u>

Even assuming that the April 2001 detention was a triggering "arrest" for Sixth Amendment purposes, the court finds no Speedy Trial Clause violation after applying the remainder of the <u>Baker</u> analysis.

A delay approaching one year may be considered presumptively prejudicial, depending on the nature and seriousness of the charges.  <u>Doggett</u> 505 U.S. at 652 n.1; <u>Maples</u>, 427 F.3d at 1026; <u>Norris</u>, 146 F.3d at 327.  A delay of under six months is not considered presumptively prejudicial.  <u>Wilson</u>, 2003 WL 1194257, at *2 (124 days not presumptively prejudicial); <u>United States v. White</u>, 985 F.2d 271, 275 (6th Cir.1993) (6 ½ months); <u>United States v. Holyfield</u>, 802 F.2d 846, 848 (6th Cir.1986), <u>cert. denied</u>, 479 U.S. 1090 (1987) (5 months).  <u>See also Hogan</u>, 74 F.3d at 145 (8 months not presumptively prejudicial).  A delay of approximately seventeen months would be presumptively prejudicial.  A finding that there was a prejudicial delay would warrant further investigation of the <u>Barker</u> factors.  <u>Norris</u>, 146 F.3d at 326-327.

<u>B.  Reason for the Delay</u>

The second factor is an examination of whether the government or the criminal defendant is more to blame for the delay.  <u>Doggett</u>, 505 U.S. at 651.  The right to a speedy trial protects defendants against delays caused by the government.  <u>Gattis v. Snyder</u>, 278 F.3d 222, 231 (3d Cir.), <u>cert. denied</u>, 537 U.S. 1049 (2002).  The burden is on the state to explain the cause for the pretrial delay.  <u>United States v. Graham</u>, 128 F.3d 372, 374 (6th Cir. 1997).

15

Any portions of the delay which are attributable to the defendant are not considered for purposes of determining whether the defendant's right to a speedy trial has been violated.  <u>Gattis</u>, 278 F.3d at 231.  <u>See also</u> <u>Henderson v. United States</u>, 476 U.S. 321 (1986) (Speedy Trial Act excludes delays caused by pretrial motions); <u>United States v. Lugo</u>, 170 F.3d 996, 1002 (10th Cir. 1999) (delay brought about by motion to suppress).

Here, there is no indication that Evans was responsible for any delay.  Instead, the state asserts that Evans was released in April 2001 "pending further investigation and laboratory testing of the seized cocaine."  (Doc. 14, RX 6, at 1.)  The state admitted that "the investigation slowly unfolded," and that the complaint was not filed until Sept. 19, 2002.  (Doc. 14, RX 13, at 2-3.)  There is no explanation from the state as to why the investigation (or testing) took seventeen months.

### C.  Defendant's Assertion of His Right

The third consideration is whether the defendant asserted his right to a speedy trial.  <u>Doggett</u>, 505 U.S. at 651.  Evans has been diligent and persistent in asserting his speedy-trial rights.  Evans filed a motion to dismiss on the basis of his right to a speedy trial.  (Doc. 14, RX 4.)  His timely direct appeal was based on the same theory, doc. 14, RX 12, as was his appeal to the Supreme Court of Ohio, doc. 14, RX 16.  Evans has raised the issue again in his petition for a writ of habeas corpus.  (Doc. 1, at § 12.A.)

16

### D.  Prejudice to Defendant

The fourth factor is whether Evans suffered prejudice as a result of the delay. Doggett, 505 U.S. at 651; United State v. Van Dyke, 605 F.2d 220, 226 (6th Cir.), cert. denied, 444 U.S. 994 (1979).  Prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect."  Barker, 407 U.S. at 532.  The Barker Court identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  The Court noted that "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Id.

Because Evans was not subject to pretrial incarceration during the period in dispute, he was not prejudiced in this regard.  See generally MacDonald, 456 U.S. at 8 (speedy trial guarantee designed to minimize possibility of lengthy incarceration prior to trial).

The second consideration is to minimize anxiety of the accused.  Dillingham, 423 U.S. at 65; Barker, 407 U.S. at 532.  Evans did suffer some prejudice as he faced the possibility of felony charges for drug possession.

As to third and most important consideration, Evans does not demonstrate how his defense was impaired by the delay.  See generally doc. 1.

### E.  Summary

Upon balancing the four Barker factors, the court concludes that the petitioner has not shown that the state court violated his Sixth Amendment right to

a speedy trial. Although the state-caused delay may have been (arguably) presumptively prejudicial, Evans was not incarcerated during the April 2001-September 2002 period, and he does not show how his defense was prejudiced by the delay. Evans has not shown that his prejudice was anything more than minimal. Norris, 146 F.3d at 328.

The court cannot find that the state-court adjudication resulted in a decision that was contrary to clearly established Federal law, as determined by the Supreme Court of the United States in Barker v. Wingo, 407 U.S. 514 (1972) and related cases. The petition should not be granted on this ground.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL.

The second ground of the petition is that Evans was denied effective assistance of counsel because counsel did not "adequately and sufficiently" research and argue his speedy trial claim. (Doc. 1, § 12.B.) Evans argues that trial counsel did not "secure proper documentation which would prove [his] claim." He claims that he requested that trial counsel "provide relevant police reports, jail facility booking logs and [his] Bureau of Criminal Investigation Report (BCI) which clearly identifies [his] arrest record" to the state court of appeals, but counsel failed to do so. (Doc. 1, memorandum in support, at 2-3.)

The respondent argues that this claim was not presented to the state courts. (Doc. 14, at 7.) A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. Coleman v. Thompson, 501 U.S. 722, 731

18

(1991); <u>Buell v. Mitchell</u>, 274 F.3d 337, 349 (6th Cir. 2001) (citing <u>Coleman v. Mitchell</u>, 244 F.3d 533, 538 (6th Cir.), <u>cert. denied</u>, 534 U.S. 977 (2001)).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994) (citing <u>Manning v. Alexander</u>, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  <u>Coleman</u>, 501 U.S. at 731-732; <u>Buell</u>, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief.  <u>Coleman</u>, 501 U.S. at 729-730; <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Morales v. Coyle</u>, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000).  Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Buell</u>, 274 F.3d at 348 (quoting <u>Coleman</u>, 501 U.S. at 750).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state

19

courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

The respondent asserts that "[a]n allegation that trial counsel was ineffective, which relies on evidence outside the record, is to be presented in the state courts in a petition for postconviction relief pursuant to R.C. 2953.21 et seq." (Doc. 14, at 20, citing State v. Gover, 71 Ohio St.3d 577, 645 N.E.2d 1246 (1995)). The normal 180-day period for filing has passed, but the respondent contends that Evans could still seek leave to file a delayed petition for postconviction relief pursuant to Ohio Rev. Code § 2953.21(A). Id.

In Gover, trial counsel had failed to file a timely notice of appeal. The Ohio Supreme Court characterized this as ineffectiveness "related to the pre-appellate process." Since the error occurred at the "trial level," the proper remedy was a petition for postconviction relief under Ohio Rev. Code § 2953.21. State v. Gover, 71 Ohio St.3d 577, 580, 645 N.E.2d 1246, 1249 (1995). See Harding v. Russell, No. 99-4302, 2001 WL 1254823, (6th Cir. Oct. 11, 2001) (citing Gover); Gibson v. Wolfe, No. 2:04cv272, 2006 WL 1028168, at *7 (S.D. Ohio Apr. 17, 2006) (where one was

20

represented by same attorney at trial and on direct appeal, ineffective assistance of

trial counsel claim properly raised in petition for postconviction relief).

In <u>Gibson v. Wolfe</u>, the court discussed the requirements for a petition for

postconviction relief:

> R.C. 2953.21 and R.C. 2953.23 govern petitions for post-conviction relief. Under R.C. 2953.21, relief from a judgment or sentence is available for a person convicted of a criminal offense who shows that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States [.]" See also, <u>State v. Grover</u> (1995), 71 Ohio St.3d 577, 645 N.E.2d 1246; <u>State v. Powell</u> (1993), 90 Ohio App.3d 260, 629 N.E.2d 13.

> Except as provided in R.C. 2953.23, a petition for post-conviction relief must be filed no later than 180 days after the date on which the trial transcript is filed in the court of appeals when there is a direct appeal of the judgment of conviction. R.C. 2953.21(A)(2).

> If a post-conviction relief petition is filed beyond the 180-day time limitation or the petition is a second or successive petition for post-conviction relief, R.C. 2953.23(A) precludes the court from entertaining the petition unless: (1) the petitioner shows that he was unavoidably prevented from discovering the facts upon which his claim for relief is based, or (2) after the 180-day time period expired, the United States Supreme Court recognized a new federal or state right that applies retroactively to the petitioner and is the basis of his claim for relief. R.C. 2953.23(A)(1)(a). The petitioner must then show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted[.]" R.C. 2953.23(A)(1)(b).

> Unless the defendant makes the showings required by R.C. 2953.23(A), the trial court lacks jurisdiction to consider either an untimely or a second or successive petition for post-conviction relief.

<u>Gibson</u>, 2006 WL 1028168, at *8.

Although the ineffectiveness claim is unexhausted, the respondent asserts that the court need not stay the petition "because there is little reason to believe that the state courts would grant leave to file [a] delayed petition for postconviction relief and the claim is meritless." (Doc. 14, at 22.) The respondent argues the court should dismiss this claim, rather than stay it.

The Supreme Court explained that the "stay-and-abeyance" procedure is used in circumstances where:

> . . . a petitioner comes to federal court with a mixed petition toward the end of the limitations period, [and] a dismissal of his mixed petition could result in the loss of all of his claims – including those already exhausted – because the limitations period could expire during the time a petitioner returns to state court to exhaust his unexhausted claims.

Pliler v. Ford, 542 U.S. 225, 230 (2004). The Court stated that the stay-and-abeyance procedure involves three steps:

> . . . first, dismissal of any unexhausted claims from the original mixed habeas petition; second, a stay of the remaining claims, pending exhaustion of the dismissed unexhausted claims in state court; and third, amendment of the original petition to add the newly exhausted claims that then relate back to the original petition.

Id. at 230-231. The Pliler Court declined to address the propriety of the stay-and-abeyance procedure, but held that district judges are not required to give pro se litigants warnings regarding the procedural consequences of dismissal. Id. at 231.

In Rhines v. Weber, 544 U.S. 269 (2005), the Court held that district courts have discretion, in limited circumstances, to hold mixed petitions in abeyance,

22

rather than dismissing them.  <u>Wiedbrauk v. Lavigne</u>, No. 04-1793, 2006 WL

1342309, at *5 (6th Cir. May 17, 2006).  The Court, however, cautioned that "stay

and abeyance should be available only in limited circumstances."  <u>Rhines</u>, 544 U.S.

at 277; <u>Wiedbrauk</u>, 2006 WL 1342309, at *5.  The Court stated that:

> . . . stay and abeyance is only appropriate when the district court
> determines there was good cause for the petitioner's failure to exhaust
> his claims first in state court.  Moreover, even if a petitioner had good
> cause for that failure, the district court would abuse its discretion if it
> were to grant him a stay when his unexhausted claims are plainly
> meritless.

<u>Rhines</u>, 544 U.S. at 277.

Here, the stay-and-abeyance procedure is inappropriate.  First, Evans has

made no argument that he had good cause for the failure to present his claims in

state court to this point.  <u>See generally</u> doc. 1.  Second, the court would abuse its

discretion by granting him a stay where his unexhausted claims are futile.

Evans would have to satisfy the criteria set forth in Ohio Rev. Code §

2953.23(A) before the trial court could consider the merits of the petition. For

example, Evans has not shown that he was "unavoidably prevented" from

discovering the facts upon which his petition would be based.  Ohio Rev. Code §

2953.23(A)(1)(a).

In addition, Evans argues that trial counsel did not submit proper and full

documentation to the court of appeals in support of his claim.  However, as

discussed earlier, his counsel did bring the stipulated facts[2] to the attention of the

court.  Although the court  of appeals made reference to insufficient factual support,

the court's decision was based on a legal definition of  "arrest," under which it found

that the speedy trial period had begun later than argued by Evans and his counsel.

A fuller factual background would have been unlikely to have altered the court's

decision.

This court finds that the unexhausted ineffectiveness claim would have been

futile.  Evans would be unable to demonstrate that his counsel was constitutionally

ineffective under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) (defendant must

show counsel's performance fell below objective standard of reasonableness, and

counsel's errors were so serious as to prejudice defendant).

The petition should not be granted on the second ground because it was not

exhausted in the state courts.  The court will not stay the petition because Evans

has not shown good cause for his failure to exhaust, and the ineffectiveness claim

would be futile.


VI.   CONVICTION BY USE OF IMPROPERLY OBTAINED EVIDENCE.

The final ground of the petition is that the petitioner's conviction was

obtained through the use of evidence gained pursuant to an unlawful arrest.  Evans

asserts: "The evidence used in this conviction was the evidence gained during the

---

2Specifically, "the operative facts that would be necessary for [the trial]
Court to make a decision."  (Doc. 14, RX 20, at 2.)

arrest of the Petitioner which originally occurred on the date of 4/25/01. The time period elapsed exceeded two hundred and seventy (270) days." (Doc. 1, at § 12.C.)

This claim was not raised in the state courts. <u>See generally</u> doc. 14, RX 12. Because the claim was not raised, it would be barred by the Ohio rule of res judicata. <u>Lott v. Coyle</u>, 261 F.3d 594, 611-612 (6th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1147 (2002); <u>Rust</u>, 17 F.3d at 160-161; <u>State v. Szefcyk</u>, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); <u>State v. Perry</u>, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Res judicata would bar Evans from litigating an issue that was raised or could have been raised on direct appeal. <u>Perry</u>, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

The Ohio rule of res judicata satisfies the first three factors in <u>Maupin</u>. <u>Jacobs</u>, 265 F.3d at 417. The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule. <u>Coleman</u>, 501 U.S. at 753 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). Evans has not shown cause.

Because Evans did not present this claim to the state courts, it has been procedurally defaulted.

## VII. SUMMARY

The petition for a writ of habeas corpus should not be granted.

The state-court adjudication of the speedy trial claim did not result in a decision that was contrary to clearly established Federal law, as determined by the Supreme Court of the United States in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972) and related cases.  The second and third grounds have been procedurally defaulted.

## RECOMMENDATION

It is recommended that the petition be denied.

Dated:  _Aug. 20, 2007_        _/s/ Kenneth S. McHargh_
                        Kenneth S. McHargh
                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

26